IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | |
| | ) | 22-cr-00039-TFM |
| v. | ) | |
| | ) | |
| MIKAYLA SCHEELE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SENTENCING MEMORANDUM**

Defendant, through counsel, submits her Sentencing Memorandum in anticipation of her sentencing hearing presently set for June 2, 2023 at 11:00 a.m.

Statement of Facts

The Court held a factually intensive hearing for this case as well as *United States v. Jeffrey Sikes*, et al, Case No. 22-cr-00020-TFM. Due to the scope and depth of that hearing, the Defendant dispenses with a full recitation of facts, and will supplement her argument as necessary. However, the Defendant incorporates the evidence adduced during the hearings of May 25, 2023 and May 26, 2023 as though fully reproduced herein.

Procedurally, unlike the Defendants in Case No. 22-cr-00020-TFM, Ms. Scheele was never indicted by a Grand Jury, and no charges were dismissed in exchange for a plea, i.e., a "plea deal." Instead, the Defendant agreed to plead guilty to a single count of Conspiracy which implicated her with the defendants in Case No. 22-cr-00020-TFM. Ms. Scheele's acceptance of responsibility predated indictments by the Grand Jury.

Sentencing Discussion

18 U.S.C. §3553(a) requires that the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 18 U.S.C. §3553(a). 18 U.S.C. §3553(b) suggests that the Court should consider the guidelines of the Sentencing Commission, to include any aggravating or mitigating circumstance. But see, <u>United States v. Henry</u>, 1 F.4th 1315 (11th Cir. 2021) recognizing that <u>United States v. Booker</u>, 543 U.S. 220 (2005), eliminated the *duty* to follow Sentencing Guidelines. "Still, the Guidelines are not irrelevant. After Booker [supra], a sentencing court must 'consult those guidelines and take them into account when sentencing,' what [the 11th Circuit Court of Appeals has] described as establishing the 'procedural reasonableness' of a sentence, but the Guidelines are no longer the final consideration." <u>United States v. Henry</u>, 1 F.4th 1315, 1320-21 (11th Cir. 2021), quoting, <u>United States v. Booker</u>, 543 U.S. at 264 (2005). Accordingly, sentencing courts are required to consider the Sentencing Guidelines as well as the statutory requirements of 18 U.S.C.A. §3553(a). *Id*.

Here, the Sentencing Guidelines suggest a term of 37 to 46 months subject to a potential downward departure if one should be filed by the United States, based on Base Offense Level of 21. The maximum sentence permitted by statute is 60 months, which would constitute a departure from the 46-month maximum sentence under the Sentencing Guidelines.

Here, the conduct was significant, but it is noted that the Defendant before the Court had no part in planning the crimes nor in causing physical (health) injury to any victims. Moreover, although at first blush it appears that the Defendant's Role in the

Offense was significant, evidence adduced during the May 25 – 26, 2023 hearing made clear that the Defendant had no role in planning the crimes; she played no role in determining who, when, where, what, how, or why the crimes would be committed. Instead, as the "expendable" person from the point of view of her co-defendants, Ms. Scheele was drugged, transported, and ordered to perform the actions for which she is now to be sentenced.

Far from obstructing justice, the Defendant before the Court cooperated immediately. She made immediate statements inculpatory statements to law enforcement. The Defendant adopts by reference Document No. 38 in this action. The Defendant entered a plea of guilty based on an Information and without the need for Grand Jury Indictment. The Defendant testified as a witness for the Government during the May 25 – 26, 2023 hearing. Her testimony continued for several hours over both days. In short, the Defendant did anything but obstruct justice.

As noted above (and in Doc. 38), the Defendant accepted responsibility and pleaded guilty to every count the Government presented.

Historically, the Defendant had difficulty as a juvenile in Nebraska and also was convicted of a 1st Offense D.U.I. in Nebraska. She has no criminal history anywhere in the 11th Circuit.

The Defendant believes that in addition to any basis for departure found in Doc. 38, the Court should consider that Ms. Scheele was relatively young both at the time of the crimes and when she first fell into the snare of her co-defendant, Jeffrey Sikes (22-cr-00020-TFM). Ms. Scheele was 19 years old and barely finished with completing her high school diploma at YRTC-Geneva (Nebraska) when she fell in with Jeffrey and Erica

Sikes. Possessing neither significant education, nor significant vocational skills, Ms. Scheele was vulnerable to tricksters like her co-defendants. Ms. Scheele became pregnant in her teens and chose life for her child. As a result, she was expelled from her family home. At this time, young, under-educated, pregnant, and homeless, she fell under the influence of the Sikes'. Shortly after her relationship with her son's father failed, Ms. Scheele was forced back into the Sikes' home for lack of alternatives. She was transported from Illinois to Colorado. Thereafter, she quickly became a victim of human trafficking as Jeffrey and Erica Sikes required her to move with a business partner as part of a business deal. To that end, her co-defendants caused her to be moved from Colorado, through Wyoming, and into Nebraska for purposes of providing "services" to the Sikes' business partner.

Following a guilty plea in the United States District Court for the District of Nebraska, but before sentencing, Jeffrey Sikes forced the Defendant before the Court (and co-defendants) to assume false identities and assist him in his flight from justice, albeit the evidence showed that not all co-defendants (including Ms. Scheele) knew he was a fugitive. To accomplish this, Jeffrey Sikes and Erica Sikes relied on coercion and duress.

"If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only when it involves threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." *United States v. Russell*, 917 F.2d 512 (11th

Cir. 1990) quoting United States Sentencing Guideline §5K2.12 (Policy Statement). In *Russell*, no physical threats or anything beyond "run-of-the-mill persuasion" was used against Russell. This case is clearly distinguishable.

As adduced during the May 25-26, 2023 hearing, from the start of the relationship, the Sikes' insisted that Jeffrey Sikes was a high-level C.I.A. operative and member of an elite commando-type governmental or quasi-governmental group known as the "Black Angels." Ms. Scheele repeatedly testified that she was told, and she believed, that a failure to obey the commands of Mr. Sikes would result in attacks on herself or her family who were still located in Kearney, Nebraska. Ms. Scheele made clear to the Court that she feared for the lives of her family, her child, and her own life if she disobeyed the Sikes'. In addition, during the pendency of these offenses, Ms. Scheele was forced to dawn a "suicide vest" containing "pipe bombs" which could/would be remotely detonated by Sikes if she failed to follow his instructions. Ms. Scheele testified that she did not know whether the vest was real, but absolutely believed that Sikes would kill her or her family if she did not obey. Unlike in *United States v. Russell*, supra, the record in this case is replete with references to the force, compulsion, and threats used against Ms. Scheele over a period of several years.

Along with the threats of force and violence, reinforced and made more credible by video images of "special ops" by the "Black Angels" and the production of a blood-soaked machete, Ms. Scheele was drugged by Jeffrey Sikes. Ms. Scheele testified that at a time where she did not feel free to refuse to follow an order, any order, she was given Lorazepam by Jeffrey Sikes. It is noted that she described taking several tablets at a time which resulted in reduced recollection and reduced inhibition. Under the circumstances,

the drugging seems to be involuntary, resulting in a reduction in quantitative *mens rea* for the Defendant. As made clear over and over, Ms. Scheele did not feel she had the ability to refuse an order. However, and conversely, she testified that she knew the wrongful nature of her acts and she turned away from the bank incident. Therefore, she accepted responsibility for her role in the crimes.

Based on the foregoing, the Defendant asks the Court to weigh all factors found in 18 U.S.C. §3553(a) as well as the factors found in the United States Sentencing Guidelines. The Defendant urges that after a complete weighing of all significant and appropriate factors, that a sentence as urged by the parties in Document 38 is appropriate and reasonable.

Respectfully submitted.

DATED: June 1, 2023 　　　　　　　　　MIKAYLA SCHEELE, Defendant

　　　　　　　　　　　　　　BY:　/s/ BRIAN J. LOCKWOOD, LLC
　　　　　　　　　　　　　　　　Brian J. Lockwood  ASB-9131-R68L
　　　　　　　　　　　　　　　　Law Office of Brian J. Lockwood, LLC
　　　　　　　　　　　　　　　　1111 Dauphin Street
　　　　　　　　　　　　　　　　Mobile, AL 36604
　　　　　　　　　　　　　　　　(251) 434-5754　　Telephone
　　　　　　　　　　　　　　　　(251) 243-7619　　Facsimile
　　　　　　　　　　　　　　　　brian.lockwood@ymail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date shown above, he filed this document using the CM/ECF System, which automatically serves all counsel of record.

　　　　　　　　　　　　　　　　/s/ BRIAN J. LOCKWOOD